UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DR. SCOTT TANNER, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California corporation, KAISER FOUNDATION HOSPITALS, a California corporation, NORTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, INC., a California corporation, and DOES 1-50,<br><br>    Defendants. | Case No: C 15-02763-SBA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Scott Tanner ("Plaintiff") filed the instant pro se action against his former employers Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. ("TPMG," erroneously sued as Northern California Permanente Medical Group, Inc.) (collectively, "Kaiser" or "Defendants"). Plaintiff seeks to rescind his employment separation agreement with Kaiser, including the comprehensive release of claims contained therein. Upon rescinding the same, Plaintiff further seeks to prosecute claims for wrongful termination, discrimination, and retaliation.

The parties are presently before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 37. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendants' motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. R. 7-1(b).

# I. BACKGROUND

## A. FACTUAL SUMMARY

In 2000, Plaintiff began working for the Kaiser Permanente Outpatient Pharmacy Department. First Am. Compl. ("FAC") ¶ 14, Dkt. 33. Plaintiff served as a staff pharmacist, a lead pharmacist, a pharmacist supervisor, and finally, in late 2010, as Pharmacist-In-Charge at Kaiser's Manteca location. Id.

The allegations of Plaintiff's 56-page FAC (like his 69-page original complaint) are profuse and discursive. In brief, between 2010 and 2012, Plaintiff was allegedly subject to harassment, discrimination, and retaliation at work. FAC ¶¶ 14-66. Plaintiff is a white male, over the age of 40, with an undisclosed "physiological serious health condition/physical disability." Id. ¶¶ 88, 94, 103. During the relevant period, Kaiser's pharmacy staff in Manteca was 85-90% Asian, female, and under the age of forty. Id. ¶ 103. According to Plaintiff, he suffered adverse employment consequences based on his color, gender, and age, as well as his disability, for which Defendants allegedly failed to provide adequate accommodation. Id. ¶¶ 90, 94-95, 103-104, 115-116.

In addition, Plaintiff asserts that he suffered harassment and retaliation based on the aforementioned factors (i.e., his color, gender, age, and disability), as well as for "[his] complaints about [other employees'] misconduct affecting patient safety and care." FAC ¶ 123. Among other allegations of misconduct, Plaintiff claims that Defendants failed to respond to reports of unlawful drug diversion (i.e., theft) and drug furnishing irregularities (i.e., pharmacist errors). Id. ¶ 125. Plaintiff also alleges that Defendants failed to take all reasonable steps to prevent further discrimination and harassment. Id. ¶¶ 133, 135.

Finally, Plaintiff alleges that Kaiser engages in unlawful business practices. FAC ¶ 151. According to Plaintiff, Defendants: (1) did not adequately compensate him and others like him; (2) did not allocate sufficient funds for "community benefit expenditures"; and (3) earned profits through 501(c)(3) tax-exempt entities, and then funneled said profits to its related for-profit entities, such as TPMG. Id. ¶¶ 141-157.

On November 15, 2012, after a purported two-year campaign against Plaintiff by his co-workers, which allegedly included verbal abuse, interference with his work performance, and exacerbation of his health condition, FAC ¶¶ 26-32, Kaiser suspended Plaintiff from work, id. ¶¶ 33-35.  Kaiser stated that the suspension "was [a] non-punitive investigation," and reduced Plaintiff's salary by 50%.  Id.  Plaintiff alleges that Kaiser did not inform him of the reason for the suspension.  Id.

While suspended, Plaintiff received materials regarding the 2012 Employee Choice Program ("ECP").  FAC ¶ 37.  ECP was a "voluntary separation incentive program" that Kaiser offered to various employees in Northern California.  Request for Jud. Not. ("RJN"), Ex. 1(A) at p. 2, Dkt. 38.  ECP offered eligible employees an opportunity to terminate their employment voluntarily in exchange for severance pay and medical/dental coverage.  Id. On December 23, 2012, Plaintiff executed a Separation Agreement and General Release (the "Separation Agreement") to take advantage of ECP.  FAC ¶ 38; RJN, Ex. 1 at p. 1, 7.[1]

The Separation Agreement includes a provision entitled "Complete Release of Claims," which released Defendants from all claims of any kind arising out of or related to Plaintiff's employment and/or termination.  RJN, Ex. 1 at p. 3.  The release

> includes, but is not limited to, all claims based in tort or contract, or under any federal, state, or local statute, ordinance, or common law, including, but not limited to, the Age Discrimination in Employment Act ["ADEA"], Title VII of the Civil Rights Act ["Title VII"], the Americans with Disabilities Act ["ADA"], the California Fair Employment and Housing Act ["FEHA"], or any claim of discrimination, harassment, breach of contract or public policy, wrongful or retaliatory discharge and all claims for compensation, vacation, attorney's fees, wrongful denial of insurance and employee benefits.

Id.  Plaintiff's employment terminated effective February 11, 2013, and he received 16 weeks of severance pay totaling $45,558.78, plus other benefits.  Id. at p. 1-2.

---

[1] Defendants request that the Court take judicial notice of the Separation Agreement and ECP materials, which are referenced in, but not attached to, the FAC.  Plaintiff does not oppose the request.  Moreover, although Plaintiff advocates for rescission of the Separation Agreement, he does not dispute its authenticity.  Thus, the Court GRANTS Defendants' request for judicial notice.  See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (a court may consider a writing referenced in a complaint, but not explicitly incorporated therein, if the complaint relies on the document and its authenticity is unquestioned).

Plaintiff now alleges that he executed the Separation Agreement under duress, menace, and/or undue influence, and therefore, that he is entitled to rescind the agreement. FAC ¶¶ 67-86. With regard to duress, Plaintiff alleges that several factors--Kaiser's refusal to accommodate his health condition, his suspension (with 50% reduction in pay), and the risk of termination--induced him to sign the Separation Agreement. Id. ¶¶ 69-74. With regard to menace, Plaintiff further alleges that he signed the Separation Agreement "to escape" ongoing harassment and threats that he endured at work and/or from his coworkers. Id. ¶¶ 75-82. Finally, with regard to undue influence, Plaintiff alleges that, because of his health condition and the aforementioned hostile work environment, he suffered a weakness of spirit that rendered him unable to exercise independent judgment when executing the Separation Agreement. Id. ¶¶ 83-86.

### B. PROCEDURAL HISTORY

On April 21, 2015, Plaintiff filed suit against Defendants in state court, alleging claims for: (1) Unlawful Attainment of Invalid Separation Agreement; (2) Age Discrimination in Violation of ADEA and FEHA; (3) Disability Discrimination in Violation of ADA and FEHA; (4) Race, Color, Gender, and National Origin Discrimination in Violation of Title VII and FEHA; (5) Failure to Accommodate Disability; (6) Retaliation; (7) Failure to Prevent Discrimination, Harassment or Retaliation; (8) Unlawful Business Practices; and (9) Constructive Discharge in Violation of Public Policy. Dkt. 1. Defendants removed the instant action to this Court based on federal-question jurisdiction. Id.

On June 26, 2015, Defendants filed a motion to dismiss the Complaint, arguing that Plaintiff: (1) failed to allege facts sufficient to support a claim for rescission of the Severance Agreement, and (2) had released all remaining claims under that agreement. Dkt. 6. On December 3, 2015, the Court granted Defendant's motion. Order, Dkt. 32. The Court found that Plaintiff failed to state facts sufficient to support a claim for rescission of the Separation Agreement, which, in turn, barred any cause of action arising out of his employment and termination. The Court further held that, with the exception of the eighth

cause of action for unlawful business practices, Plaintiff's claims arose entirely out of his employment and termination.  With regard to the eighth cause of action, Plaintiff appeared to predicate the claim on violations of both the California Labor Code ("CLC") and the Internal Revenue Code ("IRC").  The Court found that (1) the Separation Agreement served as a bar to Plaintiff's claim insofar as it arose out of alleged CLC violations, and (2) Plaintiff lacked standing to raise the claim insofar as it arose out of alleged IRC violations.  The Court granted Plaintiff leave to amend his claims, except for the ninth cause of action for constructive discharge, which is time-barred.

On December 16, 2015, Plaintiff filed the operative First Amended Complaint, re-alleging the first through eighth causes of action.  Dkt. 33.  Thereafter, Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint.  Dkt. 37.  The motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

Rule 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'"  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Where a complaint or claim is subject to dismissal, the court generally grants leave to amend, unless further amendment would be futile. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

## III.   DISCUSSION

### A.   RESCISSION CLAIM

A party to a contract may rescind the same if his or her consent was "obtained through duress, menace, fraud, or undue influence." Cal. Civ. Code § 1689(b)(1). In the original complaint, Plaintiff sought to rescind the Separation Agreement based solely on economic duress. In the FAC, Plaintiff premises his rescission claim on duress, menace, and undue influence. Despite Plaintiff's amendments to the original complaint, Defendants argue that he still fails to allege facts sufficient to establish a basis for rescission. Defendants further argue that Plaintiff cannot rescind the Separation Agreement without tendering everything of value that he received thereunder--$45,588.78 in severance pay and the value of all other benefits received.

#### 1.   Duress

Early statutory and judicial expressions of duress required an unlawful act in the nature of a tort or a crime. Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal. App. 3d 1154, 1158 (1984) (citing Cal. Civ. Code § 1569). Under modern California law, however, economic duress can serve as a basis for rescinding a settlement agreement or release. Johnson v. Int'l Bus. Machines Corp., 891 F. Supp. 522, 528 (N.D. Cal. 1995); Lanigan v. City of Los Angeles, 199 Cal. App. 4th 1020, 1034 (2011). "Economic duress is an equitable doctrine which 'come[s] into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" Johnson, 891 F. Supp. at 528-29 (quoting Rich & Whillock, 157 Cal. App. 3d at 1158-59).

The elements of economic duress are: (1) a sufficiently coercive wrongful act on the part of the defendant; (2) no reasonable alternative on the part of the plaintiff; (3) knowledge of the plaintiff's economic vulnerability; and (4) actual inducement to contract. Johnson, 891 F. Supp. at 529. "'The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine. Further, a reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin.'" Chan v. Lund, 188 Cal. App. 4th 1159, 1173-74 (quoting Rich & Whillock, 157 Cal. App. 3d at 1159, 1173-74).

Here, Plaintiff fails to allege the necessary elements of economic duress. First, Plaintiff fails to allege facts showing that he had "no 'reasonable alternative'" to participating in ECP. Lanigan, 199 Cal. App. 4th at 1034. Although Plaintiff alleges that termination was "imminent" in light of his suspension, see FAC ¶ 71, termination "was not a certainty" and Plaintiff had the option to await resolution of his suspension and return to work. Lanigan, 199 Cal. App. 4th at 1034. Alternatively, Plaintiff alleges that he could not return to work due to Kaiser's "refusal to accommodate [his] physician certified medical health conditions/disabilities or leave request." Id. Assuming Kaiser failed to accommodate Plaintiff's disability, however, Plaintiff had the option to continue his employment and seek assistance (internally or externally) to resolve that issue.

In any event, even if Plaintiff would have suffered a termination or could not otherwise have reasonably returned to work, he fails to allege facts establishing dire economic conditions such as "imminent bankruptcy or financial ruin." Johnson, 891 F. Supp. at 529 (quoting Rich & Whillock, 157 Cal. App. 3d at 1154). Although Plaintiff alleges that he faced "imminent financial ruin" due to the 50% reduction in his salary while suspended and his imminent termination, FAC ¶ 70, the mere fact that Plaintiff might have lost his job and "needed the money offered under the agreement . . . does not equate to economic duress." Perez v. Uline, Inc., 157 Cal. App. 4th 953, 960 (2007). "The same could be said of almost any case where an employee is discharged [or faced discharge] and

offered severance pay." Id.  Absent evidence of imminent financial ruin, the Court finds that Plaintiff could have preserved his claims and pursued legal action against Defendants, as an alternative to executing the Separation Agreement and its comprehensive release.[2]

Finally, and most significantly, Plaintiff fails to identify any *coercive* act on the part of Defendants that would have *caused or induced* him to sign the Separation Agreement.  Such a causal relationship between Kaiser's acts and Plaintiff's execution of the contract is required.  See Johnson, 891 F. Supp. at 530 (the defendant's act must induce the assent of the coerced party).  Plaintiff does not allege that Kaiser committed a wrongful act that actually induced him to sign the Separation Agreement.  Instead, he alleges that his suspension and imminent termination "caus[ed] a fear based coercive inducement to sign the ECP agreement."  FAC ¶ 73.  "Merely being put to a voluntary choice of perfectly legitimate alternatives is the antithesis of duress," even if that choice is made under less than ideal circumstances.  In re Executive Life Ins. Co., 32 Cal. App. 4th 344, 390-91 (1995).  Thus, the fact that Plaintiff was "forced to elect whether to opt in or opt out" of the Separation Agreement is insufficient to establish duress.  Id.  This is true even if ECP was "made more attractive" to Plaintiff because of fears regarding his job security.  Id.

### 2. Menace

Menace and duress are "often used interchangeably," "but in California menace is technically a threat of duress or a threat of injury to the person, property, or character of another."  Ordorizzi v. Bloomfield Sch. Dist., 246 Cal. App. 2d 123, 128 (1966) (citing Cal. Civ. Code § 1570).  Neither duress nor menace is established "when the voluntary action of the apprehensive party is induced by his speculation upon or anticipation of a future event suggested to him by the defendant but not threatened to induce his conduct."  Goldstein v. Enoch, 248 Cal. App. 2d 891, 894 (1967).  "The issue in each instance is whether the

---

[2] In support of the claim that he faced financial ruin, Plaintiff also alleges that he applied for, and was denied, "over fifty" other positions in Kaiser's Outpatient Pharmacy Department.  FAC ¶¶ 64, 73.  He does not allege that he applied for a position with *any other employer*.  As discussed above, the inability to remain at Kaiser is insufficient to establish imminent financial ruin.

defendant intentionally exerted an unlawful pressure on the injured party to deprive him of contractual volition and induce him to act to his own detriment." Id. at 894-95.

For reasons similar to those discussed above regarding duress, Plaintiff fails to allege the necessary elements of menace. Plaintiff alleges that certain Kaiser employees (1) "verbally attacked" him; (2) targeted him with harassing telephone calls; (3) forced him to initial a log posted upon his office door every time he exited to use the restroom; and (4) engaged in "assaultive behavior and actions toward him and other non-Asian staff." FAC ¶¶ 77-80. Although the acts alleged are wrongful, and perhaps even deplorable if proven true, Plaintiff fails to allege that Kaiser undertook any of these actions in order to deprive him of contractual volition and induce him to sign the Separation Agreement.

In fact, Plaintiff fails to allege any connection between Kaiser's purportedly wrongful acts (or the acts of its employees) and its decision to make ECP available. According to Plaintiff, the bulk of these wrongful acts occurred before Kaiser extended ECP to its employees in December 2012. See, e.g., FAC ¶ 80 (alleging that a Kaiser employee engaged in assaultive behavior toward Plaintiff on or about July 12, 2012, and August 1, 2012). Such acts could not have served as a threat to induce Plaintiff to sign the Separation Agreement when Kaiser had yet to present Plaintiff with that agreement. Additionally, Kaiser offered ECP to many of its area employees, not just Plaintiff. Although Plaintiff's apprehension regarding workplace conditions may have influenced his decision to participate in ECP, this does not establish menace. See Goldstein, 248 Cal. App. 2d at 895 (absent a threat, individual apprehension is insufficient to establish menace, "even when the deplorable conduct of [another] generates the condition").

### 3. Undue Influence

Under California law, undue influence may consist of "taking an unfair advantage of another's weakness of mind" or "taking a grossly oppressive and unfair advantage of another's necessities or distress." Cal. Civ. Code § 1575. "Undue influence . . . is a shorthand legal phrase used to describe persuasion which tends to be coercive in nature, persuasion which overcomes the will without convincing the judgment." Ordorizzi, 246

Cal. App. 2d at 130. A party seeking to invoke the doctrine of undue influence must establish: (1) undue susceptibility, i.e., a weakness of mind that results in a lessened capacity to make a free contract; and (2) excessive pressure, i.e, the application of excessive strength to secure an agreement. Olam v. Cong. Mortgage Co., 68 F. Supp. 2d 1110, 1041 (N.D. Cal. 1999) (citing Odorizzi, 246 Cal. App. 2d at 131-32). "'In combination, the elements of undue susceptibility in the servient person and excessive pressure by the dominating person make the latter's influence undue.'" Id. (quoting Odorizzi, 246 Cal. App. 2d at 131).

Plaintiff argues that he suffered undue susceptibility because he was "physically, mentally, [and] emotionally exhausted and weak from sleeplessness, severe headaches, [and] GI distress." Opp'n at 14. Such "weakness of spirit" may constitute undue susceptibility. See Johnson, 891 F. Supp. at 531 (such "weakness" need not be long lasting or wholly incapacitating, but may be merely a lack of full vigor due to age, physical condition, emotional anguish, or some combination thereof). Nevertheless, even assuming that Plaintiff suffered undue susceptibility, he fails to satisfy "the second, essential element" of undue influence, i.e., excessive pressure. Olam, 68 F. Supp. 2d at 1150; see also Johnson, 891 F. Supp. at 531 (weakness of spirit is legally insufficient to establish undue influence if it is "not accompanied by the actual exercise of overpersuasion").

Excessive pressure is generally accompanied by certain characteristics that tend to create a pattern, including: (1) discussion of the transaction at an unusual or inappropriate time; (2) consummation of the transaction in an unusual place; (3) insistent demand that the business be finished at once; (4) extreme emphasis on untoward consequences of delay; (5) the use of multiple persuaders by the dominant side against a single servient party; (6) absence of third-party advisors to the servient party; and (7) statements that there is no time to consult financial advisers or attorneys. Johnson, 891 F. Supp. at 531 (citing Odorizzi, 246 Cal. App. 2d at 133). "'If a number of these elements are simultaneously present, the persuasion may be characterized as excessive.'" Id. (quoting Odorizzi, 246 Cal. App. 2d at 133).

Here, not one of the indicia of overpersuasion is present. Plaintiff fails to allege any facts showing that discussion of the Separation Agreement occurred at an unusual or inappropriate time, or that execution of the agreement occurred in an unusual place. Like the other employees invited to participate in ECP, Plaintiff received the plan materials in the mail. See FAC ¶ 37. Consequently, he was able to review and execute the Separation Agreement at a time and place of his choosing, free from the influence of any third party.

Plaintiff asserts that the execution of the Separation Agreement was ill-timed and out-of-place because he was on a suspension. See FAC ¶ 85. Given that separation agreements often arise under such circumstances, however, the Court finds nothing inherently unusual or inappropriate regarding the time and place of the Separation Agreement's execution. See, e.g., Johnson, 891 F. Supp. at 525 (no undue influence where the plaintiff signed a separation agreement after receiving notice of his impending termination). In fact, because the *voluntary* ECP initiative was wholly unrelated to Plaintiff's suspension, any claim of undue influence here is attenuated. Cf. id. (where the plaintiff had already been designated a "surplus employee" under an "*involuntary* reduction-in-force program").

Plaintiff also does not allege that Kaiser demanded execution of the Separation Agreement at once or emphasized the untoward consequences of delay. Nor does he allege any facts suggesting that Kaiser exerted such pressures. Kaiser afforded Plaintiff 45 days to review and execute the Separation Agreement, as well as another 7 days to revoke the same.[3] As acknowledged by Plaintiff, the only consequence of delay was "loss of eligibility for ECP." FAC ¶ 85. Given that ECP was a *voluntary* incentive separation program, Kaiser was free to put its employees to a choice regarding their participation. Moreover, even if Plaintiff faced the possibility of termination if he remained at Kaiser, the

---

[3] Although Plaintiff alleges that he received the ECP materials in early December "with a December 13, 2012 deadline pressuring imminent decision," FAC ¶ 85, the December 13 deadline corresponds to the *application* period, not the *decision* period. See RJN, Ex 1(A) at p. 17. Plaintiff had until February 1, 2013, to decide whether to participate in ECP. Id. He executed the Separation Agreement on December 23, 2012.

choice presented--participate in ECP or risk termination--was "an accurate summation of [his] situation," and not necessarily coercive. Robison v. City of Manteca, 78 Cal. App. 4th 452, 458 (2000) (no undue influence where an employee-organization representative "strongly advised" the plaintiff to execute a substance abuse "recovery agreement" or face immediate termination).

Finally, Plaintiff fails to allege any facts establishing the use of multiple persuaders by Kaiser or the absence of third-party advisors for himself. Plaintiff does not allege that "anything prevented him from reviewing the agreement . . . or consulting with an attorney." Robison, 78 Cal. App. 4th at 458. Nor does he allege that any Kaiser representative made a statement or effort to persuade him to participate in ECP. This, coupled with the assertion that Plaintiff communicated only in writing with "faceless and unknown" ECP representatives, FAC ¶ 85, undercuts any claim of overpersuasion.

### 4. Conclusion

In view of the foregoing, Plaintiff fails to allege facts amounting to duress, menace, or undue influence. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's first cause of action for rescission of the Separation Agreement.

### B. REMAINING CLAIMS

Defendants contend that the Separation Agreement bars all causes of action arising out of Plaintiff's employment and/or termination. Defs.' Mot. at 7. Pursuant to the Separation Agreement, Plaintiff waived "any and all claims of any kind, known or unknown, arising out of or related to [his] employment with [Kaiser] or the termination of [his] employment." RJN, Ex. 1 at p. 3. Plaintiff does not dispute that the Separation Agreement, if enforceable, bars his claims; he argues only that the Separation Agreement is subject to rescission. See Pl.'s Opp'n at 6-17. Because Plaintiff fails to state a claim for rescission, all claims covered by the Separation Agreement's comprehensive release are barred. The Court finds that the release therefore bars the second, third, fourth, fifth, sixth and seventh causes of action, without the need for further discussion. See also Order at 7.

A brief further discussion is required as to the eighth cause of action for unlawful business practices. The eighth cause of action arises under California's Unfair Competition Law (the "UCL"), which makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. With respect to the unlawful prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Plaintiff predicates his UCL claim upon violations of the CLC and the IRC. As previously held by this Court, insofar as Plaintiff's UCL claim arises out of alleged CLC violations for unpaid wages, it relates to his employment and is subject to the comprehensive release. See Order at 7; see also Separation Agreement, RJN, Ex. 1 at p. 3 (releasing "all claims for compensation").

Insofar as the UCL claim arises out of alleged IRC violations, it is not immediately clear whether it relates to Plaintiff's employment. Even if not, Plaintiff nonetheless fails to state a claim under the UCL. "To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." Birdsong v. Apple, Inc., 590 F.3d 955, 960 (9th Cir. 2009). "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim." Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011); see also Rubio v. Capital One Bank, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

Plaintiff fails to allege that he suffered economic injury *caused by* the unfair business practice that is the gravamen of his claim. According to Plaintiff, a tax-exempt organization, such as Kaiser, "must be organized and operated exclusively for exempt purposes set forth in [28 U.S.C. § 501(c)(3)], and none of its earnings may inure to any private shareholder or individual." FAC ¶ 145. Plaintiff alleges that Defendants acted unlawfully by funneling profits to TPMG, and that such profits then inured to the benefit of

private individuals--the TPMG physicians. Id. ¶ 151. Plaintiff does not allege that he suffered any economic injury *as a result* of these purported violations, however.

Plaintiff's alleged economic injury arises out of Defendants' failure to pay wages, i.e., forced overtime, a variable pay award, and equal pay. Id. ¶ 154. The alleged injury fails in two respects. First, Plaintiff alleges no *facts* establishing a *causal connection* between Defendants' purported IRC violations (i.e., siphoning profits to private entities) and his economic injury (i.e., unpaid compensation). Thus, he lacks standing to prosecute this claim. Second, to the extent that Plaintiff's economic injury takes the form of unpaid compensation, it arises out of his employment, whether predicated upon violations of the CLC or the IRC. The Court finds that the entirety of the eighth cause of action is therefore subject to the comprehensive release.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's second, third, fourth, fifth, sixth, seventh, and eighth causes of action.

### C. LEAVE TO AMEND

If a complaint is subject to dismissal for failure to state a claim, the court has discretion whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). Leave to amend may be denied if (1) prior amendments have failed to cure the deficiencies, and/or (2) further amendment would be futile, i.e., the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]." Abigninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

Here, the Court previously granted Plaintiff leave to amend and provided a detailed analysis of the deficiencies in his pleading. Plaintiff failed to cure the same. Additionally, the Court finds that amendment would be futile. The theory advanced by Plaintiff--that he executed the Separation Agreement under coercion because of his workplace conditions and suspension--simply fails to establish any basis for rescission. Instead of trying to establish a valid basis for rescission after the dismissal of his original complaint, Plaintiff simply repackaged the facts already alleged in an effort to advance the same flawed theory

in the FAC.  Plaintiff cannot allege additional facts consistent with the FAC that would support a claim for rescission.[4]  Accordingly, leave to amend is DENIED.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendants' Request for Judicial Notice, Dkt. 38, is GRANTED.

2. Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 37, is GRANTED without leave to amend.

3. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  8/1/16

*[signature]*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

---

[4] Indeed, the Court questioned Plaintiff's ability to allege facts that would have supported a claim for rescission upon dismissal of the original complaint, but nonetheless granted leave to amend in order to give Plaintiff that opportunity.  See Order at 9, 11.